Martínez et al., Peticionarios y Apelados, *v.* Martínez, Opositor y Apelante.

Apelación procedente de la Corte de Distrito de Aguadilla en procedimientos sobre administración judicial.

Moción para que se desestimen los recursos establecidos.

No. 2329.—Resuelto en mayo 31, 1921.

Desestimación de Apelación — Transcripción Defectuosa. — Al prepararse el *transcript* de apelación el apelante no puede elegir a su gusto de los autos de la corte inferior aquellas alegaciones y documentos o partes aisladas de los mismos que puedan sostener sus contenciones y omitir o excluir lo que pueda ser desfavorable a su propósito, obteniendo así una ventaja indebida sobre su adversario y consiguiendo una revocación basada en un certificado que sólo muestra que existen dichos documentos así seleccionados o aquella parte de su contenido. Así, pues, una transcripción en la cual se copian literalmente algunas constancias del legajo de la sentencia y otras se consignan sustancialmente, no reune los requisitos exigidos por el artículo 299 del Código de Enjuiciamiento Civil; y cuando el apelante, que ha tenido tiempo para corregirla, no lo ha hecho, procede declarar con lugar una moción del apelado solicitando la desestimación del recurso.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. V. P. Martínez.*

Abogados de los apelados: *Sres. C. Franco Soto* y *J. B. Soto.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Víctor P. Martínez interpone recurso de apelación contra dos resoluciones de fecha 3 y 7 de julio de 1920, dictadas en el curso de una administración judicial, la primera modifi-

cando y enmendando el primitivo informe de un contador partidor y ordenando la preparación y presentación de un nuevo informe que comprenda los cambios así sugeridos, y la segunda aprobando y adoptando dicho informe final.

Los apelados solicitan la desestimación de la apelación por no haberse presentado el legajo de sentencia u otra base adecuada para una decisión sobre los méritos.

El secretario de la corte de distrito, a solicitud del apelante y como constancias que habían de constituir los autos en apelación en este caso, certifica en substancia lo siguiente:

1. Que el día 15 de marzo de 1917, Cecilia Méndez, representando a sus hijos menores de edad, los peticionarios en este caso, radicó el escrito jurado inicial de este caso.

2. Que el día 28 de abril de 1917 el opositor Víctor P. Martínez radicó su escrito de impugnación a la solicitud de administración judicial.

3. Que entre los hechos relacionados en el escrito inicial aparece el de que—

"El causante Víctor Martínez y Martínez, dejó a su fallecimiento bienes sujetos a partición entre sus herederos, los cuales bienes se encuentran en poder del hijo legítimo Víctor Primo Martínez y González, quien los está usufructuando desde entonces, sin haber entregado parte ninguna de los mismos ni de sus productos a sus hermanos los solicitantes, por valor de cincuenta mil setecientos cuarenta dollars ocho centavos. Y, en el escrito de oposición jurado por el señor Martínez, niega éste el hecho referido, y de los affidavits acompañados y suscritos por Emiliano Beauchamp Angleró y José Diepa Pérez, aparecen éstos jurando con fecha 28 de abril de 1917, por ante el notario don Alfredo Blasco Pagán, que hecha una liquidación del caudal de don Víctor Martínez y Martínez, teniendo a la vista todos los antecedentes y datos necesarios, resultó un déficit contra el caudal dejado por los esposos don Víctor Martínez y doña Secundina González, de veinte y nueve mil trescientos cincuenta y nueve dólares noventa y tres centavos, por lo cual resultó mayor el activo que el pasivo."

4. Que por resolución de fecha 7 de mayo de 1917 se de-

cretó la administración judicial de los bienes de Víctor Martínez y Martínez y se nombró administrador a Juan Martín Oronoz.

5. Que en mayo 11 de 1917, fué recibida por correo y archivada la moción del opositor Víctor P. Martínez apelando de la resolución de 7 de mayo de 1917, por la que se nombró administrador judicial a Oronoz y de otra resolución de igual fecha, por la que se concedió a los menores la cuota alimenticia de $100 mensuales.

6. Que con fecha 26 de mayo de 1917, Oronoz aceptó y juró su cargo de administrador judicial.

7. Que las cartas de administración fueron expedidas con fecha 29 de mayo de 1917 y en esa misma fecha se expidió mandamiento al marshal para que diese posesión de los bienes al administrador judicial.

8. Que en escritura número 63, otorgada en Aguadilla a 15 de septiembre de 1917, ante el Notario Enrique González Mena, en la que comparecieron don Juan M. Oronoz, como administrador judicial de los bienes del finado don Víctor Martínez y Martínez, y doña Cecilia Méndez y Velázquez, como madre con patria potestad de sus hijos Pedro Angel y Laura María Martínez y Méndez, siendo el objeto de dicha comparecencia, según manifestación hecha por el Sr. Oronoz, proceder a cumplimentar lo dispuesto en los artículos 35 al 37 de la Ley de Procedimientos Legales Especiales, relativos a la formación del inventario de los bienes del fallecido don Víctor Martínez y Martínez, a cuyo efecto citó para concurrir a dicha notaría, en la fecha mencionada, a las nueve de la mañana, al heredero legítimo de dicho finado, don Víctor Primo Martínez y González, quien se excusó de asistir a aquel acto, alegando, entre otras causas, según la manifestación del mismo Oronoz, y por medio de notificación escrita dirigida a dicho señor, que los menores Pedro Angel y Laura María no tienen derecho a la herencia; y citó también a doña Cecilia Méndez y Velázquez, como madre y represen--

tante de dichos menores, no habiendo citado a los acreedores, por no serle conocidos, sin perjuicio de citárseles por edic-tos, de acuerdo con la ley.  En cuyo acto doña Cecilia Mén-dez procedió a denunciar como bienes de la herencia y con arreglo a los datos que aseguró haber obtenido de los libros del registro de la propiedad, los bienes siguientes:  (Se des-criben.)

Que doña Cecilia Méndez, expuso: que según informa-ción y creencia que tiene y que cree cierta, las fincas desig-nadas que aparecen en primero, segundo, quinto, sexto y séptimo término, forman parte de una finca que se denominó "Bejucos" hoy "Villa Milagros," la que es de mayor cabida y en la que existen los siguientes establecimientos, no pu-diendo determinar la diferencia de cabida ni el valor de esta diferencia, puesto que todos los valores los ha consignado con arreglo a datos tomados del registro de la propiedad y los cree ajustados a la verdad.  Dichos establecimientos son: (Se describen.)  Y expuso también doña Cecilia Méndez que los datos relatados en cuanto a las diversas fincas y crédi-tos que se han reseñado, están arreglados a las informaciones y notas tomadas en el registro de la propiedad, por lo que los cree ciertos, ignorando si hay algunos otros bienes que puedan considerarse como pertenecientes a la herencia de don Víctor Martínez y Martínez, cuyas afirmaciones hace bajo juramento a los efectos legales.

Que la mencionada escritura fué aceptada por los concu-rrentes, leída íntegramente por el notario, y firmada por Juan M. Oronoz, por los testigos Ramón Torres Alvarez y Juan Pellot y por el Notario señor González Mena, y no por doña Cecilia Méndez por manifestar no saber, pero lo hizo a sus ruegos el primero de dichos testigos.

9. Que con fecha 4 de febrero de 1918 y a virtud de mo-ción presentada por el administrador judicial Oronoz la corte nombró como contador-partidor a Alfredo Blasco Pagán, no

apareciendo que esta orden fuese notificada a las demás partes.

10. Que aparece agregada a los autos una copia certificada de la sentencia pronunciada por la Corte Suprema con fecha 19 de febrero de 1918, confirmando las resoluciones de 7 de mayo, 1917, cuyas órdenes se refieren al nombramiento de administrador judicial y concesión de alimentos provisionales para los menores Pedro Angel y Laura María.

11. Que, en el caso arriba citado y al folio 52 de la tercera pieza existe la constancia siguiente: (Aquí sigue una aceptación de nombramiento de partidor suscrita por Alfredo Blasco Pagán.)

12. Que en 27 de mayo de 1918 se radicó en esta secretaría el informe relativo a la división de bienes, verificado por el contador partidor, licenciado Alfredo Blasco Pagán; de cuyo informe resultan los siguientes datos: (Las constancias aquí extractadas del informe referido comprenden unas diez páginas de los autos que incluyen además una reseña más o menos completa de la propuesta distribución de los bienes incluyendo un inventario de la propiedad sujeta a partición, de conformidad, según se dice, con una resolución de la corte de distrito de mayo 2 de 1918, en cumplimiento de la sentencia de esta corte dictada en marzo 15 de 1918.)

13. Que el escrito de oposición a la aprobación del proyecto de partición presentado por el opositor don Víctor P. Martínez y González con fecha 12 de junio de 1919, fué radicado en esta secretaría con fecha 14 de dicho mes y año, y él contiene entre otras las alegaciones siguientes: (Las alegaciones aquí referidas, en unión de la argumentación y cita de autoridades en apoyo de las mismas, comprenden varias páginas de los autos.)

14. Que unido a los autos de este caso existe el siguiente documento que copiado a la letra dice así: (Sigue una sentencia sobre declaratoria de herederos a favor de Víctor

Primo Martínez como único y universal heredero de Víctor Martínez y Martínez y de Secundina González y Gómez, de fecha septiembre 27, 1912, debidamente certificada por el secretario de la Corte de Mayagüez de donde aparecen indicios de haber sido inscrita varias veces en el registro de la propiedad al parecer como título a varias propiedades inmuebles.)

15. Que en los autos de este caso aparece la siguiente resolución, que copiada literalmente dice: (La resolución que aquí se transcribe de fecha julio 3, 1920, expresa haber presentado el contador-partidor Blasco Pagán su informe relativo a la partición de bienes; la radicación de una moción por la promovente interesando se aprobase el proyecto de partición tal cual fué radicado por el contador; la presentación de una moción impugnando dicho proyecto de partición por Víctor P. Martínez; el señalamiento de estas mociones para su vista en junio 26, 1918; la imposibilidad de oir a las partes en esa fecha por haberse establecido procedimiento de *certiorari* por Víctor P. Martínez; la devolución de los autos a la corte inferior en junio 16, 1919, y la subsiguiente vista de las mociones arriba referidas en la cual comparecieron tanto el abogado de Cecilia Méndez como el apelante en este caso quienes formularon no solamente los argumentos expuestos en sus mociones sino otros muchos en apoyo de sus pretensiones.  En la resolución se procede entonces a aprobar el proyecto de partición, no tal cual fué redactado por el contador-partidor, sino con muchas modificaciones, incluyéndose en el inventario ciertos bienes que fueron omitidos por el contador-partidor y excluyendo del mismo varias fincas por las razones que se indican, y en vista del fallecimiento del anterior partidor y de lo extensas que son estas modificaciones nombra un sucesor y ordena que se haga un nuevo inventario, avalúo, liquidación, partición y adjudicación de los bienes en proceso de adminis-

tración, de acuerdo con los términos y disposiciones de dicha resolución.)

16. Que con fecha 7 de julio de 1920 fué incorporado a los autos de este caso el inventario, avalúo, liquidación, partición y adjudicación de los bienes quedados al fallecimiento de don Víctor Martínez y Martínez, tal como quedó hecho por don Arturo Reichard, de acuerdo con la resolución de esta corte de distrito, de fecha 3 de julio de 1920, que ha sido transcrita en el párrafo décimoquinto de esta certificación.

17. Que si bien no aparece por resolución o diligencia constancia de los títulos a favor de don Víctor Martínez y Martínez que se hayan entregado a los señores Blasco y Reichard, en su carácter de contadores, nombrados por esta corte, resulta, sin embargo, que a los autos de este caso corre unida una certificación del Registrador de la Propiedad de Mayagüez, referente a dos fincas, una de noventa y cinco cuerdas trece y medio céntimos y otra de veinte cuerdas, ambas en el barrio de "Purísima Concepción" de las Marías, adquiridas por el causante don Víctor Martínez y Martínez, e inscritas a favor de don Víctor Primo Martínez y González como heredero abintestato del mismo, y rola también en los autos la certificación sobre declaratoria de herederos que se ha copiado íntegra en el párrafo décimocuarto de esta certificación, cuya declaratoria aparece inscrita a favor de don Víctor Primo Martínez y González, como heredero abintestato de don Víctor Martínez y Martínez, en cuanto a un crédito hipotecario de veintisiete mil ochocientos trece dollars ocho centavos; también en cuanto a una finca de 33 cuerdas en "Guatemala" de San Sebastián; en cuanto a otra finca de 40 cuerdas 51 céntimos, en el mismo barrio y término; en cuanto a otra de 51 cuerdas 70 céntimos, en el barrio "Hato Arriba" de dicho término; otra de 53 cuerdas 47 céntimos; otra de 16 cuerdas 22 céntimos y otra de 182 cuerdas en el barrio de "Perchas" de San Sebastián; y si

bien no aparece haberse comunicado al señor Martínez el nombramiento de contador recaído primero en don Alfredo Blasco y luego en don Arturo Reichard consta, no obstante, que el Sr. Martínez fué citado por el contador Blasco para el acto de la división a la cual no concurrió y consta también haber sido oída su impugnación al proyecto de partición hecho por Blasco, cuya impugnación fué desestimada al aprobarse en definitiva la partición enmendada de acuerdo con la orden de la corte, por el nuevo contador don Arturo Reichard, cuya aceptación del cargo consta haber tenido lugar con fecha 3 de julio de 1920.

18. Que en los autos de este caso existe la siguiente resolución:  (Sigue la resolución de julio 7, 1920, aprobando el informe final como fué presentado.)

19. Que con fecha 21 de julio de 1920, Víctor P. Martínez fué notificado de las resoluciones de julio 3 y 7 de 1920.

20. Que en los autos de este caso existe archivado con fecha 31 de julio de mil novecientos veinte, el escrito de apelación hecho por don Víctor P. Martínez y González, y cuyo tenor literal es el siguiente:  (Se copia el escrito de apelación.)

21. Que en estos mismos autos consta la notificación del escrito de apelación precedente, así:  (Sigue una copia literal.)

Y en conclusión, el secretario certifica además ''que todas las constancias relacionadas en la presente certificación, así como también las inserciones literales de algunos extremos del record del caso arriba titulado, son conformes con lo que resulta de dichos autos; y que, al expedir tal certificación relacionando unos extremos y transcribiendo literalmente otros, ha sido por haberlo así solicitado el opositor y apelante don Víctor P. Martínez.  Y, que todos los puntos relacionados y los insertos literales, forman, de acuerdo con la petición del dicho señor Martínez, el record de la apelación en el presente caso, entablada por aquel opositor contra las

resoluciones de esta corte de distrito de 3 y 7 de julio último, referente la primera a enmiendas en el proyecto de partición, y comisión dada a don Arturo Reichard del Valle, para redactar la partición final calcada en el proyecto presentado por el contador-partidor fallecido, señor ·Alfredo Blasco Pagán, como más extensamente se expresa en dicha orden, que ha sido transcrita literalmente en otro sitio de la presente certificación; y la segunda referente a la aprobación definitiva de la mencionada partición.''

Fundado en este resumen hecho .en fragmentos, diez y ocho errores han sido alegados.

Haremos referencia a las cuestiones que se han tratado de plantear únicamente en tanto sea necesario para explicar el peligro y dificultad envueltos en cualquier tentativa para determinar tales cuestiones tomando por base los datos contenidos en los autos incompletos que tenemos ante nuestra consideración.

Transcribimos el primero, segundo y décimocuarto señalamientos con lo suficiente de la argumentación hecha en el último de éstos para indicar la fuente que se nos cita en cuanto a los hechos en que se funda:

''A. El inferior erró al dar posesión y expedir las cartas testamentarias al administrador Sr. Oronóz en 26 y 29 de mayo de 1917 motivado a hallarse suspendida su jurisdicción motivado haber radicado este opositor en dichos autos el 11 de aquel mes de mayo su apelación contra resolución de 7 del mismo mes decretando la administración y nombrando al Sr. Oronóz administrador.

''B. De la misma manera erró el inferior al expedir el mandamiento el 29 de mayo de 1917 al marshal, para que diera posesión de los supuestos bienes ·del causante al administrador Sr. Oronóz, pues se hallaba suspendida su jurisdicción en virtud de aquellas apelaciones.

''N. Erró el inferior al mandar a pagar al administrador removido Oronoz, el tanto por ciento sobre el capital por propia moción y sin audiencia ni defensa de esta parte.

''Tal error se halla justificado como los anteriores y además por los siguientes:

"En los procedimientos civiles se procede a instancia de parte interesada y nunca por propia moción pues entonces equivaldría a constituirse en juez y parte lo que viola e infringe el artículo 23 de Ley de Enjuiciamiento Civil.

"Además un administrador removido como el Sr. Oronoz por su negligencia y su culpabilidad en el desempeño de su cargo, no puede obtener remuneración por unas obligaciones que no ha cumplido. En efecto el Sr. Oronoz y la Cecilia Méndez han declarado bajo juramento ante aquel inferior, que las cuotas alimenticias que se le mandaron dar a los menores como alimentos, no se le daban y que se gastaban entre el Sr. Oronoz, la Cecilia Méndez y el abogado Franco Soto, esto dió motivo que el mismo inferior removiese del cargo al Oronoz de administrador judicial, la Cecilia Méndez con la pérdida de la patria potestad sobre aquellos menores y el nombramiento de tutor para que lo representase. Esos hechos son del conocimiento personal del inferior y constaban en el record aquel del inferior por medio de la certificación librada por el taquígrafo Evaristo Estrille, y hoy aparece en el record en la secretaría de esta honorable corte agregada en el *certiorari* número 228 *Martínez* v. *Crosas.*"

Los autos nada dicen respecto a ninguna orden de destitución y de no haber sido por la admisión contenida en el señalamiento décimocuarto, hubiéramos quedado en la situación de tener que proceder por virtud de la teoría de que el administrador primeramente nombrado continuó actuando en todo el procedimiento, y es el administrador quien según la resolución de julio 3, 1920, rindió sus cuentas finales, inventario y liquidación de los bienes en junio 16 de ese año. Pero si el nombrado primeramente fué destituído el medio corriente y ordinario hubiera sido el pronto arreglo final de sus cuentas y entrega de posesión a su sucesor, en cuyo caso la cuestión promovida en el primero y segundo señalamiento vendría a ser una cuestión académica y el error, de haber alguno, suponiendo que no fué subsanado por los demás procedimientos subsiguientes, *supra,* no sería perjudicial. Por otra parte, al considerar el señalamiento décimocuarto no puede esperarse que tengamos que buscar en otros

autos archivados en esta corte los hechos en los cuales el apelante se funda para solicitar la revocación de las resoluciones apeladas en este caso.

En cuanto a los alegados errores que surgen de la aprobación de la partición final será bastante con decir que no tenemos ante nos todos los escritos y documentos en los cuales la corte inferior basó su resolución. Hasta la misma petición mencionada en los párrafos primero y tercero de la certificación del secretario se echa de menos. En cuanto al contenido de la escritura No. 63 a la cual se hace referencia en el párrafo octavo del resumen, que representa ser un inventario de la propiedad perteneciente a los bienes, nada sabemos fuera del hecho de que Cecilia Méndez parece que hizo ciertas manifestaciones ante el notario. En el párrafo duodécimo se nos dice que el informe presentado en mayo 27, 1918, por Blasco Pagán, muestra ciertas cosas. Respecto a lo que pueda revelar en cuanto a otros extremos que pudieran haber influído en la corte inferior y justificado su actuación nada nos consta. Asimismo en el párrafo décimotercero se enumeran ciertos motivos de oposición que se dicen fueron presentados a la corte inferior pero la alegación en donde constan estas objeciones no la tenemos a la vista. Además, el juez sentenciador en la resolución de julio 3 hace mención de una moción radicada por el peticionario solicitando la aprobación del informe hecho por el contador y expresando los motivos de la acción así invocada; pero esta moción a virtud de la cual actuó el juez sentenciador al aprobar el informe después de hacer ciertas modificaciones al mismo no está en los autos ni se hace referencia a él en ninguna otra parte de ellos. Así también en el décimoséptimo párrafo no solamente se nos niega el privilegio de examinar el certificado del registrador de la propiedad al cual se hace referencia en él, sino que ni siquiera aparece que este certificado jamás fuera sometido como prueba bien ante el partidor o ante la corte para su consideración en relación con

el informe de tal partidor. Estamos privados de toda oportunidad para considerar cualesquiera razones que hayan podido ser aducidas por el juez de distrito al resolver las objeciones promovidas por el apelante a la aprobación del informe hecho por el contador "cuya impugnación fué desestimada al ser aprobada finalmente la partición enmendada." La resolución de 7 de julio no menciona para nada ninguna moción, objeción o impugnación hecha por el apelante. Si el secretario pretende certificar en cuanto a lo que él deduce de la resolución en cuestión, entonces por lo menos debimos haber estado en libertad para poder llegar a nuestras propias conclusiones; pero si los autos de la corte inferior contienen cualquier resolución expresa sobre la cuestión así presentada a la corte sentenciadora tenemos derecho a que se someta esa resolución a nuestra consideración.

Discutir y resolver las numerosas cuestiones sometidas por el apelante, no obstante la moción para desestimar la apelación, implicaría que el apelante en cualquier caso puede elegir a su gusto de los autos de la corte inferior todas aquellas alegaciones y documentos o partes aisladas de los mismos que puedan sostener sus contenciones y omitir o excluir lo que pueda ser desfavorable a su propósito, obteniendo así una ventaja indebida sobre su adversario y consiguiendo una revocación basada en un certificado que sólo muestra que existen dichos documentos así seleccionados o aquella parte de su contenido.

Nuestro Código de Enjuiciamiento Civil, adicionado por la ley de 1917 como fué enmendado en 1919, determina en términos precisos lo que habrán de contener los autos en apelación. El artículo 303 nos permite cierta latitud al determinar si una apelación será desestimada por falta de los "documentos requeridos" o si se dará al apelante una oportunidad de completar unos autos defectuosos. Pero, sujetos a esta restricción, los preceptos estatutorios respecto a qué es lo que constituirá el legajo de sentencia, incluyendo la

exposición o pliego de excepciones o transcripción alternativa, si alguna hubiere, y en cuanto a cómo serán preparados y certificados, son imperativos y deben ser observados, por lo menos en substancia al presentarse cuestiones para ser revisadas por esta corte. El lenguaje empleado por muy liberalmente que sea interpretado no tiene por objeto, autoriza ni permite el procedimiento adoptado por el apelante en este caso.

Podemos agregar sin comentario alguno para indicar los principios generales envueltos así como la tendencia de criterio en este sentido en otras jurisdicciones, las siguientes citas: 4 C. J., página 59; artículo 1648, página 98; artículo 1703, página 131; artículo 1741, página 140; artículo 1760, página 416; artículos 2112 y siguientes, página 424; artículo 2130, página 449; artículo 2166, página 553; artículo 232, página 731; artículo 2662, página 735; artículo 2665, página 736; artículo 2666, página 751; artículo 2685, página 285; artículo 2738; 2 ''Hayne New Trial and Appeal,'' página 1276; artículo 230, página 1385; nota 3 *b,* página 475; artículo 265, página 1520; artículo 273; *Featherman* v. *Granite County,* 28 Mont. 462; *Glavin* v. *Lane,* 29 Mont. 228; *Butte Mining & Mill. Company* v. *Kenyon,* 30 Mont. 314; *In re Dougherty's Estate,* 34 Mont. 336; *Kimball* v. *Semple,* 31 Cal. 658; *Larkin* v. *Larkin,* 26 Cal. 323; *Miller* v. *Thomas,* 78 Cal. 509; *Shain* v. *Eikerenkotters,* 88 Cal. 13; *Thompkins* v. *Montgomery,* 116 Cal. 120; *Matter of Paige,* 12 Idaho, 410; *Estate of Broome,* 162 Cal. 258; *Going* v. *Guy,* 166 Cal. 279; *Erving* v. *Napa Valley Brewing Company,* 18 Cal. App. 135.

Durante seis meses o más que han transcurrido desde la radicación de la moción que ahora consideramos el apelante no ha demostrado ningún deseo de enmendar los autos y las apelaciones deben ser desestimadas.

*Desestimadas las apelaciones.*

Jueces concurrentes: Sres. Presidente Hernández y Aso ciados Wolf, del Toro y Aldrey.